UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-331-GWU

RUSSELL FOUTS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Russell Fouts originally brought <u>Fouts v. Barnhart</u>, London Civ. A. No. 04-91-GWU (E.D. Ky) to obtain judicial review of an unfavorable administrative decision on his application for Disability Insurance Benefits (DIB).  After a period of administrative reconsideration prompted by the Court's Memorandum Opinion, Order, and Judgment of December 15, 2004, it is again before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); <u>Crouch v. Secretary of Health and Human Services</u>, 909 F.2d 852, 855 (6th Cir. 1990).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a

1

Fouts

whole and must take into account whatever in the record fairly detracts from its weight.  Crouch, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims.  See 20 C.F.R. Section 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process.  Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986).  An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985).  Essentially, the severity requirements may be used to weed out claims that are "totally groundless."  Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.  Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which

appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading

of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Fouts, a 52 to 54 year-old[1] former coal mine foreman with a "limited" education, suffered from impairments related to degenerative disc disease at L4-L5 and L5-S1 with a herniated nucleus pulposus at L5-S1, rotator tear tendonitis of the left shoulder and chronic obstructive pulmonary disease with shortness of breath.  (Tr. 236-237).  While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work.  (Tr. 240).  Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled.  (Tr. 241).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Tr. 239).

---

[1]This was the plaintiff's age during the relevant time period.

Fouts

Fouts alleged a disability onset date of June 7, 2002 on his original DIB application. (Tr. 55). The plaintiff's claim was denied at all administrative levels including that of an ALJ which became the final administrative decision on December 5, 2003. (Tr. 18-26). The claimant appealed this action to federal district court and the undersigned reversed and remanded the case in the aforementioned decision of December 15, 2004. While this appeal was pending, Fouts filed a subsequent DIB application and was found disabled as of July 31, 2004, his 55th birthday. (Tr. 235). Therefore, this action became one for a closed period of DIB between June 7, 2002 and July 30, 2004.

After review of the evidence presented, the undersigned concludes that the administrative decision finding Fouts was not disabled during the relevant time period is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Joyce Forrest included an exertional limitation to light level work restricted from a full range by such non-exertional restrictions as (1) an inability to stand or walk for more than six hours in an eight-hour day; (2) an inability to sit for more than six hours in an eight-hour day; (3) an inability to ever climb ladders, ropes or scaffolds; (4) an inability to more than occasionally stoop or crawl; (5) an inability to more than occasionally perform overhead lifting with the upper left extremity; (6) a need to avoid repetitive bending or twisting; (7) a need to avoid repetitive and prolonged stooping, or

crawling; and (8) a need to avoid exposure to noise, temperature extremes, concentrated humidity, dust, fumes, and chemicals. (Tr. 397). In response, the witness identified a significant number of jobs in the national economy which could still be performed. (Tr. 397). Therefore, assuming that the vocational factors considered by Forrest fairly characterized Fouts' condition during the relevant time period, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

This action was originally reversed and remanded because the ALJ erred in evaluating Fouts' pulmonary problems. Dr. James Chaney, the plaintiff's treating physician, diagnosed chronic bronchitis on several occasions and referred him to a pulmonary specialist who performed Spirometry and found a moderate obstructive lung defect. (Tr. 128, 132, 184). A CT scan also revealed signs of a suspicious lesion in the right upper lobe of the claimant's lungs. (Tr. 186). Dr. Chaney indicated that Fouts would need to avoid performing "significant manual labor" as well as exposure to pulmonary irritants as a result of his pulmonary impairment. (Tr. 169). These restrictions were not included in the hypothetical question relied upon by the ALJ. The other medical sources had not focused on the pulmonary condition and, so, the ALJ could not rely upon them to offset the treating source. Therefore, a remand of the action for further consideration was required.

Upon remand of the action, this problem has been cured. The hypothetical question's limitation to light level work and restrictions concerning exposure to dust,

Fouts

fumes and chemicals are essentially consistent with Dr. Chaney's pulmonary limitations. The additional treatment records from Dr. Chaney following the remand primarily concern Fouts' condition after the relevant time period and do not impose more severe functional limitations than those found by the ALJ. (Tr. 278-369). Therefore, this portion of the ALJ's decision is now supported by substantial evidence.

Dr. Stephen Nutter examined Fouts in September of 2005 following the remand and identified the existence of more severe functional limitations than those found by the ALJ. (Tr. 270-273). However, Dr. Nutter saw the plaintiff more than one year after the relevant time period and during a time frame when he had already been found to be disabled. The restrictions do not appear to "relate back" to the pertinent time period. Furthermore, the doctor appears to have based his limitations primarily upon the claimant's musculoskeletal problems. (Tr. 271). Therefore, this opinion was not binding on the ALJ

Dr. Michael Landy testified at the administrative hearing as a medical advisor concerning Fouts' pulmonary problems. (Tr. 381-396). The claimant objects to this testimony because the doctor did not review all of the medical exhibits. (Tr. 382). However, Dr. Landy did not impose fewer pulmonary restrictions than those found by the ALJ and the hypothetical question was consistent with the opinion of a treating source. Therefore, any error in Dr. Landy not seeing the entire record is harmless.

Fouts

Fouts asserts that one suffering from chronic obstructive pulmonary disease "obviously" could not stand or walk for up to six hours in an eight-hour day as found by the ALJ.  The Court notes that no medical source who saw the plaintiff during the relevant time period imposed a more severe limitation.  Thus, the Court must reject the claimant's argument.

The remaining hypothetical factors fairly characterized Fouts' musculoskeletal condition.  The hypothetical question was consistent with the opinion of Dr. James Bean, a treating neurosurgeon who treated the plaintiff, and imposed a 20 pound weight lifting restriction as well as a need to avoid repetitive or prolonged stooping, crawling or bending.  (Tr. 151).  The physical factors of the hypothetical question were also consistent with the restrictions indicated by Dr. Carlos Hernandez (Tr. 112-121) and Dr. Parandhamulu Saranga (Tr. 158-165), the non-examining medical reviewers.  Dr. Bean's opinion offset the more severe musculoskeletal limitations indicated by Dr. Chaney (Tr. 169), another treating source, as with those of the Dr. James Templin (Tr. 157), a one-time examiner.[2]  As previously noted, Dr. Nutter did identify far more severe physical restrictions but these were well after the relevant time frame, do not "relate back" and are outweighed by the opinion of Dr. Bean, a treating source who issued his opinion

---

[2] This was the Court's finding when this action was previously before it.

Fouts

during the relevant time period. Therefore, the ALJ dealt properly with this portion of the medical record.

Fouts argues that the ALJ erred in failing to properly consider his impairments in combination. However, the undersigned has already determined that the hypothetical question presented to the vocational expert fairly depicted the plaintiff's condition. Therefore, the ALJ implicitly considered all of the plaintiff's impairments in combination.

After review of the evidence presented, the undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 2nd day of May, 2007.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**